## TURNER v. NEWMAN.
### No. 1832.

Court of Appeal of Louisiana. First Circuit.
April 7, 1938.

D. D. Newman, of Leesville, in pro. per.

Woosley & Cavanaugh, of Leesville, for appellee.

LE BLANC, Judge.

Plaintiff, Dempsey F. Turner, seeks to obtain a personal judgment in the sum of $405 for money which he alleges he advanced in his official capacity as sheriff of

Vernon parish, at various times during the year 1933, to the defendant, Dempsey D. Newman, in the latter's capacity as attorney for the tax collector on fees to be earned and expenses incurred in tax litigation and which advances, it was understood, would be refunded by the said Newman when his fees and expenses would be paid. Plaintiff alleges that the said money was advanced from the current tax collections of Vernon parish due to the fact that the funds of the sheriff's salary fund were in a bank which at the time was on a restricted basis and could not be withdrawn. The basis for his present cause of action is found in an allegation to the effect that on March 16, 1935, the said amounts advanced by him as alleged were charged back to him and he had to pay them to the state of Louisiana, the police jury of Vernon parish, and the Vernon parish school board. He avers amicable demand on the defendant without avail.

The defendant, for answer, admits that prior to April 14, 1933, plaintiff advanced him certain sums of money in his official capacity as sheriff, which money represented expenses in connection with the defense and prosecution of certain tax suits in Vernon parish, but he avers that under a ruling of the Attorney General's office, with which plaintiff was familiar, he, defendant, could not and would not be required to refund any such advances, and he specially denies that he at any time ever agreed to make any refund or repayment of the same.

On trial of the case in the district court there was judgment in favor of the plaintiff and against the defendant, as prayed for, and the defendant now prosecutes this appeal.

The defendant, in his capacity as attorney for the tax collector, was handling a number of suits and it appears that from time to time he was advanced sums of money by the plaintiff who was then sheriff and ex-officio tax collector of Vernon parish, on the fees which he was to collect as a result of such litigation. Up to a certain period, the amounts advanced to him as expenses were collected from the fees which he earned. In March, 1933, when all the banks in the state, including that in which the sheriff's salary fund account was deposited, were placed on a restricted basis, plaintiff questioned the defendant's right to obtain further advances, in view of the shortage of funds, but as a result of some communication with the office of the At-

torney General, he did advance him out of the current tax collections various amounts for which he obtained defendant's receipts totaling the amount herein sued for. These receipts were carried in the cash drawer of the office as cash items. There is some dispute as to exactly what the ruling of the Attorney General's office with regard to charging these items was, but that we will discuss later.

In August, 1934, there was found a shortage in the accounts of the office of sheriff and tax collector held by the plaintiff, and it became necessary for the Governor to suspend him. The office was then administered by the supervisor of public accounts. An audit was made and the shortage was shown to be the sum of $18,152.01. Through the sureties on his bonds and by other means, the sum of $10,381.97 was collected, leaving a balance due of $7,810.04. It developed that the parish was indebted unto the sheriff for various sums such as the allowance made for the state representative, fees for court attendance, expenses for transporting prisoners and insane, etc., dating from the year 1930, the net amount being the sum of $7,756.05. As a means of settling the shortage in his accounts, a compromise was effected between him and the police jury by resolution properly adopted by that body, the same being approved by the proper state officials, by the terms of which he was allowed to compensate and offset the balance he was short in his accounts with the amount due him as aforesaid, and he was given a full acquittance and discharge and his quietus issued.

In the lengthy itemized statement by which the amount of the shortage was arrived at, the cash items which form the subject of this suit were listed as charges against the sheriff and he bases his claim that he paid these charges when the settlement or compromise under which he was permitted to offset his whole indebtedness with the amount due him by the parish was effected.

The mistake the sheriff made, in our opinion, was in carrying these advances made to the defendant as cash items and without some notation as to what account they were to be charged to. The evidence in this case, we believe, clearly indicates that they were chargeable to the sheriff's salary fund and that he had received information or advice from the office of the Attorney General which authorized him to so charge them, as they were to be paid out

of that fund. As we have already seen, the question as to his having had a ruling from the Attorney General is one which he disputes. He admits having spoken to the Attorney General's office about the matter, but says that he was told to make the advances and that they would be taken care of when the tax suits involving the expenses would be settled. We believe that the testimony shows that prior to the largest of these advances, one in the sum of $200, there was no definite information that the expenses incurred by the defendant in handling these tax suits were chargeable to the sheriff's salary fund, but on the day the advance referred to was made, there was some question raised by the sheriff and it was at that time that defendant referred him to a ruling made by the Attorney General and the telephone conversation just mentioned ensued. Defendant contends that in conformity with the ruling previously made, the sheriff was told in that conversation that these expenses should be made from the tax collections and charged to the sheriff's salary fund, and, after some probing, Mr. Ellis Hoffpauir, chief deputy in the office, admits that that was what the Attorney General said to do. Here then was the sheriff's authority to charge not only the item of $200, but all others of the same nature which he was carrying, to the sheriff's salary fund. He took it upon himself, however, to carry them as cash items paid out of the current tax collections, and naturally in compiling the statement under which a settlement was effected between himself and the parish, he was charged with them. He failed entirely to support his allegation that the advances had been made with any understanding on the part of the defendant that he would refund them out of his fees and in the absence of any other form of a personal obligation by the defendant, we do not see on what ground the latter could be held.

The weakness of plaintiff's case, we believe, appears in the suggestion made that the defendant might have a right to proceed against the sheriff's salary funds himself, for the reimbursement of whatever actual expenses he had in these tax suits, represented by the itemized bills. As a condition precedent to exercising such right, the defendant, of course, would have first to reimburse the plaintiff for the amount of these advances. This thought is probably the one which prompted the district judge to award judgment in favor of the plaintiff, as he seems to have rested his judgment on the authority of the case of Board of School Directors v. O. Delahoussaye, Sr., 30 La.Ann. 1097. In that case, the defendant who was the state and parish collector of St. Martin parish was sued by the school board for a certain sum of money collected by him as taxes and which he turned over to a person who not only was not authorized, but was forbidden to receive the fund. He was held liable to an accounting, but as it also appeared that he had honestly paid it and that the money had found its way into the parish treasury or had been disbursed for the use of the parish, the court further held that equity and good conscience forbade that the parish should thus enrich itself at his expense although he had acted erroneously. As he had called the parish in warranty, judgment was in turn awarded in his favor on his call in warranty against the parish. Such are not the facts in the present case at all. The money advanced by the plaintiff was advanced to a party who was duly authorized to receive it. It was a legitimate charge against a particular fund and it was the duty of the plaintiff and not of the defendant to make the proper charge. If the sheriff's salary fund to which the items should have been charged owed the amounts to the sheriff in his settlement and compromise with the police jury, it was then his duty to take these items into account and to see that he was given proper credit for them. He cannot, now that this settlement has been effected, seek recourse on a personal claim against the defendant, and then force the defendant to seek redress on his part against a fund or account which was closed out at the time the settlement and compromise with the plaintiff was entered into.

We are of the opinion that the judgment of the lower court is erroneous and that it should be reversed.

For the reasons stated, it is therefore ordered, adjudged, and decreed that the judgment appealed from be and the same is now set aside, annulled, and reversed, and it is further ordered that there be judgment herein in favor of the defendant and against the plaintiff, dismissing the present suit and rejecting his demand at his costs.